# IN THE SUPREME COURT OF IOWA

No. 12–0339

Filed September 21, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**SARA ANNE KERSENBROCK,**

      Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The Grievance Commission of the Supreme Court of Iowa recommends a public reprimand. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Max E. Kirk of Ball, Kirk & Holm, Waterloo, for respondent.

**APPEL, Justice.**

This matter comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.11.[1] The Iowa Supreme Court Attorney Disciplinary Board (Board) alleges the respondent, attorney Sara Kersenbrock, engaged in multiple instances of misconduct in violation of several rules of professional conduct. The Grievance Commission of the Supreme Court of Iowa (commission) recommends a public reprimand. Upon our de novo review, we suspend Kersenbrock's license to practice law for thirty days.

## I. Procedural and Factual Background.

Sara Kersenbrock is an attorney licensed to practice law in Iowa. Kersenbrock is a member of the Iowa State Bar Association, Black Hawk County Bar Association, and the American Bar Association. Kersenbrock has no prior disciplinary history.

In July 2010, a former employee of Kersenbrock, Laura Anderson, filed a complaint with the Board. The complaint alleged Kersenbrock engaged in a number of improper business activities, including improper handling of client retainers. Anderson's complaint prompted the client security commission to audit Kersenbrock. Charles Brinkmeyer performed the audit and concluded Kersenbrock failed to properly deposit retainers into a client trust account, failed to prepare monthly reconciliations of the client trust account, and improperly certified various aspects of the annual client security questionnaire. Brinkmeyer summarized the findings of his audit in a memorandum dated April 25, 2011.

---

[1]Unless otherwise specified, all citations to the Iowa Court Rules are to the 2012 version, effective February 20, 2012.

The Board filed a complaint against Kersenbrock in September 2011. The Board alleged Kersenbrock violated Iowa Rules of Professional Conduct 32:1.5(a) (collecting an unreasonable fee), 32:1.15(a) (failing to maintain adequate records), 32:1.15(c) (failing to deposit retainers into client trust account), and 32:8.4(c) (engaging in conduct involving misrepresentation).

Anderson testified for the Board at the hearing. Anderson worked for Kersenbrock as a paralegal from 2005 to 2010. Anderson testified Kersenbrock received retainers in most of her cases. She stated Kersenbrock did not deposit any retainers into the client trust account early on in her employment. About fifty to fifty-five percent of the retainers were checks, and forty-five percent were made by cash. Anderson explained that the vast majority of check retainers were deposited into Kersenbrock's personal/operating bank account. Anderson further explained Kersenbrock did not deposit cash retainers into the client trust account, but instead placed the cash retainer in a book or drawer and spent the cash as needed. In one matter in particular, Anderson stated Kersenbrock received a $3000 cash retainer from Bullet Harding on February 17, 2010. According to Anderson, Kersenbrock gave Anderson a $100 bonus and placed the remainder into a book on Kersenbrock's bookshelf. In addition to the client retainer problems, Anderson also testified that Kersenbrock prematurely took a second-half probate fee in the Schoonover estate. Anderson stated Kersenbrock received the complete $2500 payment for the Schoonover estate before Kersenbrock filed the final report in the estate. Anderson further testified Kersenbrock did not perform trust account reconciliations during her employment.

Brinkmeyer also testified at the hearing. Brinkmeyer stated he saw no indication Kersenbrock made regular deposits of retainers into her trust account. From 2005 through 2007, Kersenbrock made no deposits into her client trust account. The balance in the trust account increased from $321 to $1665 in 2008, but it was unclear to Brinkmeyer how many deposits were made during that time because some of the statements were missing. Brinkmeyer found only three deposits in 2009. Also, in 2010 Kersenbrock made five deposits, yet records show she received at least twelve retainers that year. While Brinkmeyer opined Kersenbrock failed to properly deposit client funds into the trust account, he conceded on cross-examination he did not know how much time she spent working on a client's case before she received the retainer. Brinkmeyer therefore generally could not say whether Kersenbrock earned the retainers, which would have eliminated the need for her to place the retainer into a client trust account.

Brinkmeyer did specifically testify, however, that Kersenbrock failed to properly deposit retainers in two matters. Kersenbrock received a $600 retainer from Greg Stanek in October 2010. Brinkmeyer spoke with Kersenbrock about the Stanek retainer, and Kersenbrock admitted she did not deposit the retainer into the trust account even though "[s]he understood she should have." Moreover, in the Harding matter, Kersenbrock told Brinkmeyer she kept $100 of the $3000 retainer for herself, gave $100 to Anderson, and then placed the remainder on a bookshelf in her office.

In addition, Brinkmeyer testified Kersenbrock failed to maintain adequate records. Brinkmeyer noted that Kersenbrock had a manual client ledger book, but the entries were sporadic. He stated that Kersenbrock failed to "keep on any kind of a regular basis any list of

clients with the balances that each client had in their trust account." Kersenbrock also had an incomplete trust account register. Brinkmeyer stated it was impossible to reconcile the trust account with balances of individual clients because "[t]he records were not there." Additionally, Brinkmeyer stated Kersenbrock did not have any trust account reconciliations. Brinkmeyer testified that, although Kersenbrock stated in her client security questionnaire she performed monthly reconciliations, he concluded these statements were not true.

Kersenbrock testified on her own behalf. She conceded she did not deposit many of the retainers she received from 2005 to 2010 into a client trust account. She stated, however, that it was unnecessary for her to do so because the retainers were already earned. Kersenbrock explained that, although records demonstrated she received a number of retainers between 2005 through 2010, none of the records admitted by the Board established how much work she had already performed for the clients from whom she received the retainers. Kersenbrock did admit, however, that she should have deposited fifty to one hundred dollars into a trust account in the Stanek matter. She also stated she did not immediately deposit the Harding retainer and did not have a good reason for failing to do so. Kersenbrock recognizes she should have taken the Harding retainer to the bank. In the Schoonover matter, Kersenbrock testified she filed the final report within two or three days of sending the bill of $2500 to the administrator. Finally, Kersenbrock stated that she "had not done official reconciliation with the checkbook" despite telling the client security commission she did so in the questionnaire, but also stated she performed monthly reconciliations "in her head."

Kersenbrock testified that her organizational skills are better now. She acknowledged inadequacies in her recordkeeping and has taken measures to correct them.

Following the hearing, the commission found Kersenbrock failed to deposit client retainers into a client trust account as required by rule 32:1.15(c), failed to maintain adequate records in violation of rule 32:1.15(a), collected an unreasonable fee because she received a premature probate fee in the Schoonover matter in violation of rule 32:1.5(a), and engaged in conduct involving misrepresentation by falsely certifying the status of her trust accounting procedures on annual reports to the client security commission in violation of rule 32:8.4(c). The commission recommended a public reprimand.

## II. Standard of Review.

We review the findings of the commission de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 677 (Iowa 2010). The Board has the burden to prove misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (Iowa 2009). This burden requires a greater showing than the preponderance of the evidence standard, but is less demanding than proof beyond a reasonable doubt. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). If misconduct is established, we may impose a "lesser or greater sanction than the discipline recommended by the grievance commission." *Earley*, 774 N.W.2d at 304 (citations and internal quotation marks omitted).

## III. Ethical Violations.

**A. Trust Account.** Iowa Rule of Professional Conduct 32:1.15(c) states: "A lawyer shall deposit into a client trust account legal fees and

expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Iowa R. Prof'l Conduct 32:1.15(c); *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 602–03 (Iowa 2011). When the attorney withdraws funds, contemporary notice should be given to the client. Iowa Ct. R. 45.7(4); *Netti*, 797 N.W.2d at 603. An accounting should also be provided to a client upon request. Iowa R. Prof'l Conduct 32:1.15(d); Iowa Ct. R. 45.2(2) (2011); *Netti*, 797 N.W.2d at 603.

We conclude the Board has proven a violation of rule 32:1.15(c) by a convincing preponderance of the evidence in the Stanek and Harding matters. Although Anderson's credibility was an issue at the hearing, the same is not true with respect to Brinkmeyer. Brinkmeyer testified that Kersenbrock stated she did not deposit the $600 retainer in the Stanek matter into the trust account even though "[s]he understood she should have." Kersenbrock testified at the hearing that fifty to one hundred dollars of the retainer in the Stanek matter should have been placed in a trust account.

Moreover, in the Harding matter, Kersenbrock was given a $3000 cash retainer on February 17, 2010. Kersenbrock testified she did not immediately deposit the retainer. Instead, she placed the retainer in her "sock drawer" for "a number of weeks." Records show Kersenbrock withdrew $1360 of the retainer on June 20 for fees and costs. Then, on July 2, Kersenbrock finally deposited the balance of the retainer ($1420) into the client trust account. Kersenbrock testified she had no good reason for failing to deposit the retainer in the Harding matter when she received it.

Although we find the Board has proven a violation of rule 32:1.15(c) in the Stanek and Harding matters, on this record the Board

has failed to establish additional violations. While it is true Brinkmeyer testified Kersenbrock did not regularly deposit retainers into the client trust account between 2005 and 2010, Kersenbrock argues she was not required to deposit them because the fees were earned. The Board did not produce any evidence establishing the fees were unearned. Also, Brinkmeyer conceded he did not know how much time Kersenbrock spent working on a client's case before receiving the retainer.

On these facts, we are satisfied the Board has met its burden in establishing Kersenbrock violated rule 32:1.15(c) by failing to deposit retainers into a client trust account in the Stanek and Harding matters.

**B. Adequacy of Records.** The Board alleges Kersenbrock violated rules 32:1.15(a), (f), and 45.2(2). Rule 32:1.15(a) provides, "Complete records of such [trust] account funds . . . shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation." Iowa R. Prof'l Conduct 32:1.15(a). The comments to this rule explain that a "lawyer should maintain on a current basis books and records in accordance with generally accepted accounting practice and comply with any recordkeeping rules established by law or court order." Iowa R. Prof'l Conduct 32:1.15(a) cmt. 1. Rule 45.2(2) states, "Books and records relating to funds or property of clients shall be preserved for at least six years after completion of the employment to which they relate." Iowa Ct. R. 45.2(2) (2011). This rule is applied through rule 32:1.15(f), which requires all trust accounts to be governed by chapter 45 of the Iowa Court Rules. Iowa R. Prof'l Conduct 32:1.15(f).

We conclude the Board has established a violation of these rules. Brinkmeyer's audit revealed Kersenbrock failed to "keep on any kind of a regular basis a list of clients with the balances that each client had in their trust account." For example, between May and August 2008, the

balance of the trust account increased from $321 to $1665. Brinkmeyer testified that some of the statements were missing, though, so he could not tell how many deposits were made during that time period or from which client retainer the deposits derived. Similarly, Kersenbrock failed to provide sufficient information to determine the source of many of the deposits made into her operating account in 2009 and 2010. Thus, according to Brinkmeyer, "many of the deposits in the operating account remain unidentified." In his memorandum, Brinkmeyer noted he could "not put any amount of confidence in the details of either the check register or the client ledger" because the entries in the manual ledger were sporadic and the trust account register was incomplete. Brinkmeyer explained Kersenbrock had no electronic record keeping system and she prepared only minimal manual records over a period of several years. Brinkmeyer concluded in his memorandum that "[r]ecordkeeping by [Kersenbrock] is nearly non-existent," and that "[t]here is an abundance of evidence . . . to clearly show that Kersenbrock has failed to keep accurate records as required." He also stated Kersenbrock failed to adequately train or oversee proper record keeping for purposes of the client trust account. Kersenbrock herself acknowledged she needed to improve her bookkeeping procedure.

**C. Premature Probate Fee.** Our probate rules state that a lawyer is entitled to second-half probate fees "when the final report is filed and the costs have been paid." Iowa Ct. R. 7.2(4); *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009). An attorney who takes the entire fee before the filing of the final report violates rule 32:1.5(a) of the Iowa Rules of Professional Conduct, which prohibits a lawyer from "collect[ing] an unreasonable fee . . . or violat[ing] any

restrictions imposed by law." Iowa R. Prof'l Conduct 32:1.5(a); *Casey*, 761 N.W.2d at 61.

The Board alleges Kersenbrock received the first- and second-half fees in the Schoonover estate before the final report was filed. Records show Kersenbrock received the entire $2500 probate fee on February 25, 2010. The final report, however, was not filed until March 4, 2010. Kersenbrock concedes the second-half fees was collected prematurely, testifying that she sent a bill to the executor of the estate for the second-half fees two or three days before filing the final report. We therefore agree with the Board that Kersenbrock prematurely collected the second-half probate fees in violation of rule 32:1.15(a) of the Iowa Rules of Professional Conduct.

**D.   Misrepresentation.**   Iowa Rule of Professional Conduct 32:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). Misrepresentation requires proof of intent to deceive. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 294 (Iowa 2011); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Smith*, 569 N.W.2d 499, 501 (Iowa 1997) (interpreting DR–101(A)(4) and stating "[t]he key question is whether the effect of the lawyer's conduct is to mislead rather than to inform." (citations and internal quotation marks omitted)). The Board must prove the attorney acted with some level of scienter greater than negligence. *Netti*, 797 N.W.2d at 605.

The Board alleges Kersenbrock engaged in conduct involving misrepresentation by stating in her annual client security questionnaires that she (1) kept "all funds of clients for matters involving the practice of law in Iowa in separate interest bearing trust accounts located in Iowa";

(2) kept "all retainers, regardless of size . . . deposited in [her] trust account"; (3) "train[ed] and supervise[d] [her] nonlawyer staff's involvement with [her] trust account"; and (4) performed monthly "reconciliations of [her] trust account balances with bank statement balances and individual client ledger balances."

We agree with the commission that the Board has proven a violation rule 32:8.4(c). As discussed above, Kersenbrock failed to deposit the retainers in the Stanek and Harding matters in an interest-bearing trust account. Kersenbrock admitted she knew she should have deposited the retainers. Moreover, Brinkmeyer testified it was impossible to reconcile the accounts because the records were inadequate. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk*, 553 N.W.2d 322, 324 (Iowa 1996) (noting impossibility of performing reconciliations in finding attorney failed to reconcile trust account balances). Brinkmeyer asked Kersenbrock to provide the trust account reconciliations, but she had none. Although Kersenbrock asserts she performed reconciliations "in her head," she also stated she had no official reconciliation. In short, we conclude Kersenbrock misled the client security commission by falsely certifying the status of her trust accounting procedures on annual reports. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 100 (Iowa 2010) (holding false certification that trust account was properly reconciled constitutes conduct involving dishonesty, fraud, deceit, or misrepresentation).

Having found Kersenbrock violated rules 32:1.15(a), (c), (f), 32:8.4(c) and 45.2(2), we now turn to the appropriate sanction.

### IV. Sanction.

The appropriate sanction is determined by the particular circumstances of each case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v.*

*Ackerman*, 786 N.W.2d 491, 497 (Iowa 2010). We do, however, seek a degree of consistency. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clauss*, 711 N.W.2d 1, 4 (Iowa 2006). Respectful consideration is given to the recommendations of the commission, but ultimately "the matter of sanction is solely within the authority of this court." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison*, 727 N.W.2d 115, 119 (Iowa 2007) (citation and internal quotation marks omitted). The appropriate sanction is determined by weighing the aggravating and mitigating circumstances and considering "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 550 (Iowa 2012) (citation and internal quotation marks omitted).

We first consider mitigating circumstances. Kersenbrock has no prior disciplinary history. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Denton*, 814 N.W.2d 548, 551 (Iowa 2012). It is also undisputed that none of Kersenbrock's clients were harmed by her conduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012) (noting lack of harm to clients is a mitigating factor). Additionally, Kersenbrock has acknowledged inadequacies in her record keeping and has taken steps to ensure the same mistakes will not reoccur. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 268 (Iowa 2012) (taking responsibility for actions is mitigating factor); *Thomas*, 794 N.W.2d at 295 (establishing new office procedures to prevent prior mistakes is a mitigating factor). Further, although Kersenbrock prematurely billed her client for second-half probate fees, she had a colorable future claim to the fees and filed the final report soon after billing her client. *See Comm. on Prof'l Ethics & Conduct v. Jackson*, 492

N.W.2d 430, 435 (Iowa 1992) (imposing public reprimand for premature receipt of fees in probate); *see also Smith,* 569 N.W.2d at 503 (imposing thirty-day suspension for premature receipt of probate fee and securing unjustified extraordinary fee).

There is, however, an aggravating circumstance. Because Kersenbrock did not keep adequate records, we have no way of knowing whether the trust account violation outlined above was an isolated occurrence or a more frequent event. The persistent failure to keep appropriate records has the effect of preventing effective review of Kersenbrock's accounting practices.

A public reprimand might be sufficient sanction for each of the ethical violations, standing alone. *See, e.g., Denton,* 814 N.W.2d at 551 (public reprimand warranted for trust account violation); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sobel,* 779 N.W.2d 782, 789–90 (Iowa 2010) (public reprimand for trust account violation); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera,* 560 N.W.2d 592, 595 (Iowa 1997) (public reprimand for failing to maintain adequate records and mismanagement of client funds); *Comm. on Prof'l Ethics & Conduct v. Morris,* 505 N.W.2d 194, 195–96 (Iowa 1993) (holding public reprimand warranted for attorney who "knowingly misled the client security and disciplinary commission by falsely certifying the status of his trust accounting procedures on annual reports"). These cases, however, did not include a systematic failure to maintain adequate accounting records and did not involve multiple violations of our ethics rules. The cumulative impact of all violations is an important consideration. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 819 (Iowa 2001); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Reedy,* 586 N.W.2d 701, 703 (Iowa 1998). Under these circumstances,

we conclude that a stronger sanction is required. We conclude that the appropriate sanction in this case is a suspension of Kersenbrock's license for thirty days.

### V. Conclusion.

For the above reasons, we suspend the license of Sara Kersenbrock to practice law in this state for thirty days. The suspension applies to all facets of the practice of law. Iowa Ct. R. 35.12(3). Kersenbrock must comply with the notification requirements of rule 35.23, and costs are taxed against her pursuant to rule 35.27(1). Unless the Board objects, Kersenbrock's license will be automatically reinstated on the day after the thirty-day suspension period expires if all costs have been paid. Iowa Ct. R. 35.13(2).

**LICENSE SUSPENDED.**