# IN THE SUPREME COURT OF IOWA

No. 12–0793

Filed September 28, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**TA-YU YANG,**

      Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends public reprimand of attorney for ethical violations. **ATTORNEY REPRIMANDED.**

Charles L. Harrington and Nicholas Tré Critelli III, Des Moines, for complainant.

Ta-Yu Yang, Des Moines, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board alleged an attorney violated ethical rules by making misrepresentations to the Board of Immigration Appeals (BIA) and by failing to inform a client that the attorney's ineffectiveness could be asserted in support of a motion for reconsideration of an adverse immigration decision. Upon our review of the record and our consideration of the findings of fact, conclusions of law, and recommendation of a division of the Grievance Commission of the Supreme Court of Iowa, we find the attorney violated ethical rules, and we publicly reprimand him.

### I. Factual and Procedural Background.

Ta-Yu Yang was hired in 2001 to represent Donald Baudilio Escalante-Silva, a Salvadoran national, in deportation proceedings. Donald had entered the United States without proper documentation. Yang filed an application with the United States Citizenship and Immigration Services (USCIS) under the Nicaraguan Adjustment and Central American Relief Act (NACARA) seeking recognition of Donald as a legal resident of the United States. *See* Nicaraguan Adjustment and Central American Relief Act, Pub. L. 105-100, Title II, 111 Stat. 2193 (1997).[1]

While his removal proceeding was still pending, Donald returned to El Salvador in the summer of 2002 and married Vilma. When Donald and Vilma subsequently reentered the United States without proper

---

[1]Adopted by Congress in 1997, the statute established a process through which certain foreign nationals could, under limited circumstances, become legal permanent residents of the United States.

documentation, they were detained. They were placed in separate deportation proceedings before the immigration court.[2]

Yang thereafter agreed to represent both Donald and Vilma in their deportation proceedings. Yang filed, and the immigration court granted, a motion requesting a change of venue and permission to appear telephonically for both clients in October 2002. The separate cases against Donald and Vilma were consolidated upon Yang's motion, and venue was changed from Harlingen, Texas, to Chicago, Illinois.[3]

The removal proceedings against Donald and Vilma were administratively closed in December 2006 pending resolution of Donald's request for relief under NACARA. After Donald's NACARA claim was denied in early 2009, however, the previously consolidated removal proceedings against Donald and Vilma were recalendared as separate cases. The immigration court scheduled a pretrial conference hearing known as a "master calendar hearing" (MCH) in Donald's case for May 5, 2009, in Omaha before Judge James R. Fujimoto. The notice of the MCH was sent to Donald but was not sent to attorney Yang despite his previous appearance as Donald's counsel of record in the same case file.

Based on his previous request for telephonic appearance granted by the court in 2002, Yang assumed that he and Donald could appear telephonically at the MCH and advised Donald accordingly. Donald came to Yang's office on May 5, 2009. After waiting for a call from the court during the morning hours, Yang placed several telephone calls to Judge

---

[2]The immigration court is established within the Executive Office for Immigration Review at the United States Department of Justice. *See generally* 8 C.F.R. § 1003.1 (2012).

[3]Although the immigration court to which venue was transferred was actually located in Chicago, the respondents' deportation proceedings were to be held in Omaha, Nebraska.

Fujimoto's office. During the last of these telephone inquiries, Yang was advised by a member of the court's staff that the matter had been treated as a "no-show," or default, because Donald had failed to appear in Omaha for the hearing and that the court had ordered Donald's removal in absentia.

Yang filed a motion requesting the reopening of the removal proceeding and rescission of the removal order. The motion asserted that Yang "did receive notice for the MCH from the court and assumed that he [was] still listed as the attorney of record" in the case and that Donald had relied on Yang's legal advice that telephonic participation in the hearing would be allowed.[4] The motion was denied by the court in a ruling dated September 10, 2009. The court's ruling noted that the notice of the May 5, 2009 MCH had been sent by the court to Donald but not to Yang. Citing section 4.15(m) of the Immigration Court Practice Manual, the ruling further noted that Donald's telephonic appearance and Yang's telephonic appearance as Donald's counsel at the May 5, 2009 MCH could have been authorized by the court only upon the filing of a motion in writing explaining the reason(s) for waiver of in-person attendance at the hearing. As no such motion was filed in advance of the May 5, 2009 MCH, the motion for reopening and rescission was denied. Citing *Matter of Lozada,* 19 I. & N. Dec. 637 (BIA 1988), the court's ruling noted Donald's claim that his failure to appear was a consequence of his detrimental reliance upon Yang's "incorrect and unauthorized

---

[4]The record includes copies of orders authorizing Donald and his counsel to appear telephonically for other scheduling hearings scheduled for May 19, 2006, and December 5, 2006, in the same case file.

instructions" would be "more properly advanced through a motion to reopen asserting ineffective assistance of counsel."[5]

Yang did not inform Donald of the option of asserting Yang's ineffective assistance as the ground for another motion to reopen the deportation proceeding. Instead, Yang sought review of Judge Fujimoto's ruling before the BIA alleging again that he had received notice of the May 5, 2009 MCH from the immigration court and reasonably believed he was still recognized as Donald's counsel. Donald, however, chose a different course and hired new counsel who lodged an ethical complaint against Yang and filed a new motion for reconsideration of Judge Fujimoto's ruling.[6]

The Board filed a complaint alleging Yang violated rule 32:8.4(c)[7] (engaging in conduct involving misrepresentation) when he made a misrepresentation of fact to the BIA in his appeal from the immigration court's ruling. The Board asserted Yang's express allegation on appeal that he had received notice from the court of the May 5, 2009 MCH was untrue inasmuch as the immigration court had served the notice on Donald but not Yang. The Board further alleged Yang violated rule 32:1.7(a)(2) (continuing to represent a client when there is a significant risk that the representation will be materially affected by a personal interest of the lawyer) by failing to withdraw as Donald's counsel after Judge Fujimoto's ruling revealed that a motion to reopen asserting

---

[5]In *Lozada*, the Board of Immigration Appeals held that a motion to reopen a deportation proceeding on the ground of ineffective assistance of counsel should state whether a complaint "has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not." *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988).

[6]The record indicates the motion to reopen filed by Donald's new counsel was granted by the immigration court.

[7]Unless otherwise specified, all citations to the Iowa Court Rules are to the 2012 version, effective February 20, 2012.

Yang's ineffective assistance could be filed. The Board's complaint also alleged Yang violated rule 32:1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation) when he failed to inform Donald that ineffective assistance was a potential ground for reopening the removal proceeding and rule 32:1.7(b) (lawyer may represent a client notwithstanding the existence of a conflict of interest if the affected client gives informed consent in writing) in continuing to represent Donald in the appeal from Judge Fujimoto's ruling without Donald's informed consent.

Yang denied he engaged in intentional misrepresentation. He asserted his failure to disclose that the notice was delivered to him by Donald rather than directly from the court was an unintentional oversight rather than an act of misrepresentation in violation of rule 32:8.4(c). Yang also denied he violated the other rules cited by the Board because his representation of Donald was not ineffective under the circumstances.

The matter went to hearing before the commission. The commission found Yang violated rule 32:8.4(c) in the appeal of Judge Fujimoto's ruling by representing the notice of the MCH was received from the court. The commission found the Board failed to prove violations of the other rules cited in the Board's complaint but recommended Yang be publicly reprimanded. This recommendation was based in part on the commission's consideration of Yang's history of one prior public reprimand for neglecting a client's appeal and four prior private admonitions. It was also based in part on the commission's recognition of Yang's long history of community service, his cooperation with the Board's investigation, and his reputation as a knowledgeable

immigration lawyer who has assisted countless immigrants with difficult immigration problems.

## II. Scope of Review.

Our review of this attorney disciplinary proceeding is de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard*, 653 N.W.2d 373, 375 (Iowa 2002). "It is the Board's burden to prove ethical violations by a convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Denton*, 814 N.W.2d 548, 551 (Iowa 2012). Although we give respectful consideration to the commission's findings and recommendation for sanction, we are not bound by them. *Id.*

## III. Discussion.

Upon our de novo review of the record, we agree with the commission's finding that Yang violated rule 32:8.4(c) when he made a misrepresentation in the appeal from Judge Fujimoto's ruling. We find by a convincing preponderance of the evidence that the misrepresentation was knowingly made on appeal as it was made after Judge Fujimoto's ruling on the motion to reopen had expressly emphasized the inaccuracy of Yang's earlier assertion that he had received notice of the May 5, 2009 MCH from the court. Although it is plausible that Yang simply erred in making the inaccurate factual representation in his motion requesting Judge Fujimoto to reconsider his ruling, we find Yang's repetition of the inaccurate factual assertion on appeal after a court ruling had expressly emphasized its inaccuracy constituted a misrepresentation made with scienter in violation of rule 32:8.4(c). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011).

We also find by a convincing preponderance of the evidence that Yang violated rule 32:1.4(b) when he failed to explain to Donald that he could file a motion alleging Yang's ineffective assistance as a ground to reopen the removal proceeding. Although Yang asserts he did not explain this option to Donald because he was confident based on his considerable professional experience as an immigration lawyer that Judge Fujimoto's ruling would be reversed on appeal, we conclude Yang owed his client an explanation of the alternative course of action because it was reasonably necessary to permit Donald to make an informed decision on the matter.

We further find by a convincing preponderance of the evidence that Yang violated rule 32:1.7(a)(2) by continuing to represent Donald without disclosure and informed consent after it became clear that one strategic option for challenging Judge Fujimoto's ruling would include a claim of Yang's ineffectiveness and possibly a complaint asserting Yang's violation of ethical rules. In continuing the representation of Donald without disclosure of the apparent conflict of interest, Yang ignored a significant risk that the representation would be materially limited by Yang's personal interest in avoiding a potential ethical complaint.[8]

**IV. Sanction**.

When deciding on an appropriate sanction for an attorney's ethical violations, we consider the nature of the violations, the need to protect the public, deterrence of similar misconduct by other lawyers, the

---

[8]We agree with the commission's determination that Yang did not commit a separate sanctionable violation of rule 32:1.7(b) by continuing to represent Donald in the appeal without Donald's informed consent. Although Yang could have continued to represent Donald had he made disclosure of the conflict and obtained Donald's informed written consent consistent with the strictures of rule 32:1.7(b), he did not do so. This failure to pursue the "safe harbor" of informed consent for the continuing representation does not constitute a separate violation of rule 32:1.7(b).

lawyer's fitness to practice law, and the court's duty to uphold the integrity of the legal profession in the eyes of the public. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 685 (Iowa 2006). We also consider any relevant aggravating and mitigating circumstances evidenced in the record. *Id.* In its well-written and soundly reasoned report, the commission noted Yang's prior disciplinary history as an aggravating circumstance and recounted significant mitigating circumstances arising from his substantial service to the immigrant community and his complete cooperation with the Board's investigation. In this case, we conclude the commission's recommendation of a public reprimand is most appropriate. Accordingly, we impose a public reprimand. The costs of this action shall be taxed to Yang as provided in rule 35.27(1).

**ATTORNEY REPRIMANDED.**